# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| JIMMMIE HILL and BARBARA HILL, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| VS. ) | No. 1:04-1151-T-An |
| ) | |
| JAMES BOWLES, Chief of Police ) | |
| of the Town of Gibson, *et. al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER ON DEFENDANTS' PENDING RENEWED MOTION TO DISMISS
## AND/OR MOTION FOR SUMMARY JUDGMENT
## AND
## ORDER OF REMAND

Jimmie Hill and wife Barbara Hill (collectively "Plaintiffs") sued the Town of Gibson, Tennessee; James Bowles, individually and in his official capacity as the former Chief of Police of the Town of Gibson; and Wallace Keymon, individually and in his official capacity as the Mayor of Gibson in state court. These defendants collectively removed the action to this court on the ground that the case arose under federal law, and, although the basis for removal was initially unclear, Plaintiffs ultimately agreed that they were asserting violations of their federal constitutional rights and seeking relief pursuant to 42 U.S.C. § 1983. Although Plaintiffs' position seemed to resolve the removal issue, the court ordered Plaintiffs to file an amended complaint clarifying the clearly established constitutional right

This document entered on the docket sheet in compliance with Rule 58 and/or 79 (a) FRCP on 12/19/05

or rights allegedly violated in this case. In the same order, the court denied the original defendants' pending motion to dismiss and/or motion for summary judgment without prejudice to its renewal after Plaintiffs amended their complaint.

Plaintiffs have amended, and the original defendants have renewed their motion to dismiss and/or motion for summary judgment. The only remaining defendants are Defendants James Bowles and Wallace Keymon ("Defendants" here), in their individual capacities.[1] In this order, the court addresses whether either or both of these defendants are entitled to dismissal and/or summary judgment on the § 1983 claims asserted against them.[2] For the following reasons, the court GRANTS Defendants' Motion to Dismiss and/or Motion for Summary Judgment in its entirety, DISMISSES Plaintiffs' § 1983 claims against Defendant Bowles and Defendant Keymon, and REMANDS the case to the Circuit Court for Gibson County, Tennessee. In light of these decisions, Defendants' Motion to Strike Portions of Plaintiffs' Response to Defendants' Renewed Motion to Dismiss and/or Motion for Summary Judgment is DENIED as moot.

---

[1] Since the renewal of the motion to dismiss and/or motion for summary judgment, the court has dismissed Plaintiffs' claims against the Town of Gibson, Tennessee. The court has also dismissed the official capacity claims against James Bowles and Wallace Keymon.

[2] The Amended Complaint also added claims alleging that, since the commencement of this action, one of Plaintiffs' witnesses was subjected to intimidation in violation of 42 U.S.C. § 1985. The court has recently dismissed the § 1985 claims without prejudice on procedural grounds.

I.

Plaintiffs' Allegations[3]

Plaintiffs Jimmie Hill ("Jimmie") and Barbara Hill ("Barbara") are husband and wife. They reside in the Town of Gibson, Tennessee ("Gibson"), where Jimmie owns his own truck-repair business. Defendant Bowles is the former Gibson Chief of Police, and Defendant Keymon is the Mayor of Gibson.

The Police Officers Standards Commission ("POST Commission") of Tennessee revoked Defendant Bowles' certification, forcing him to resign as Chief of Police, when the POST Commission discovered that Defendant Bowles had a felony conviction of which the commission was previously unaware. Neither Jimmie nor Barbara actually claimed responsibility for disclosing Defendant Bowles' felony conviction. Defendant Bowles, however, came to "believe[]" that Plaintiffs were in part responsible for his woes because Bowles had heard that, while Jimmie had known about ongoing efforts to decertify Bowles and could have stopped those efforts, Jimmie, instead, did nothing.

As a result of his suspicions, Plaintiffs allege, Defendant Bowles "undertook a series of acts to harm Jim and Barbara Hill" in violation of their federal constitutional rights. Am. Compl. ¶ 8. Some of the particular incidents of alleged retaliation were taken by individuals other than Defendant Bowles, but Plaintiffs still maintain that Defendant Bowles was the essential leader of an official effort to punish Jimmie for not stopping Defendant Bowles'

---

[3]The court's rendition of Plaintiffs' allegations are taken from the Amended Complaint.

3

decertification. First, Defendant Bowles admittedly made complaints to the Occupational Health and Safety and Health Administration ("OSHA") and the Environmental Protection Agency ("EPA") regarding Jimmie's business' compliance with standards within each agency's regulatory jurisdiction. Within a two-week time frame, moreover, these agencies and several other state or federal agencies conducted on-site compliance audits at Jimmie's truck-repair business. The audits disrupted Jimmie's business, and Plaintiffs "believe . . . Defendants or their agents" wanted and caused the disruption to occur in retaliation for Defendant Bowles' decertification. *Id.* ¶ 9.

Second, Plaintiffs allege that "Defendants" conspired to take a truck that Jimmie had possessed and had used in his business for several years. Jimmie acquired possession of the truck at least nine years before its seizure after a customer of Jimmie's refused to pay for repairs that Jimmie had made to the truck. Jimmie possessed the truck pursuant to an asserted state law mechanic's lien and he eventually "claimed" ownership of the truck as an adverse possessor. *Id.* ¶ 11. People in Gibson had seen the truck in Jimmie's possession over the years, and even Defendant Bowles had once worked on the truck as an employee of Jimmie's business. Jimmie did not have record title to the truck.

The conspiracy to take the truck allegedly began to unfold when a Gibson police officer stopped the truck for expired tags and improper registration. The officer did not, however, arrest the driver or seize the truck at that time. Instead, the officer subsequently visited Jimmie's business and informed Jimmie that a "late hit" had been received reporting

4

the truck stolen. It was at this point that the officer seized the truck. According to Plaintiffs, the "late hit" and the seizure were orchestrated by Gibson officials and employees. Plaintiffs contend these officials and employees should have given Plaintiffs a hearing before carrying out the orchestrated seizure.

Next, Plaintiffs allege that Gibson police officers have specifically targeted Barbara. For example, a Gibson police officer once stopped Barbara for having a dirty license plate. In addition, Gibson police officers activated the blue lights on their patrol cars in Barbara's presence. One or more Gibson police officer parked in Plaintiffs' driveway while Barbara was at home. One or more Gibson police officer "pulled out in front of" Barbara. These acts were, according to Plaintiffs, intended to scare Barbara.

As for Defendant Keymon, Plaintiffs allege that he is liable for two reasons. First, even though Defendant Keymon knew of the fact that Bowles had made complaints about Jimmie's business to the EPA, Defendant Keymon did not take any steps to "prevent further constitutional deprivations." *Id.* ¶ 14. Plaintiffs believe this shows that Defendant Keymon condoned harassment and retaliation against Plaintiffs. In addition, Plaintiffs "believe" that Defendant Keymon had been conspiring with Defendant Bowles throughout the course of the alleged harassment and retaliation. *Id.* ¶ 15.

Contrary to the court's order, the Amended Complaint does very little to articulate

Plaintiffs' § 1983 claims.[4] Specifically, Plaintiffs do not specify at what point during the chain of events described above a particular constitutional right was violated under color of state law. Nor do they attempt to articulate a catch-all constitutional claim that would apply to the entire chain of events as a whole. Instead, Plaintiffs introduce their Amended Complaint by declaring that their case "arises under the Fourth, Fifth, and Ninth Amendments to the United States Constitution applicable to the citizens of the individual states by the [Fourteenth] Amendment to the United States Constitution." *Id.* ¶ 1. Seven paragraphs later, after describing the nature of Defendant Bowles' ill-will toward Jimmie, Plaintiffs assert that Defendant Bowles "undertook a series of acts" that ultimately violated what Plaintiffs describe as their federal rights to:

> equal protection; the enjoyment of life, liberty, and property and freedom from their deprivation without due process of the law; freedom from invasion of privacy; right to earn a living without illegal interference; freedom from humiliation and intimidation and harassment.

*Id.* ¶ 8. These legal contentions are not connected in any discernable way to the factual allegations (*i.e.*, the "series of acts") contained in either the preceding or the subsequent paragraphs. Likewise, in paragraphs sixteen, seventeen, and eighteen, Plaintiffs offer verbatim quotations of the text of the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution, respectively. The court, and presumably Defendants Bowles and

---

[4] This court fully realizes that there is no specific "heightened pleading" standard applicable to § 1983 claims. None of the court's concerns about the adequacy of Plaintiffs' pleading arise solely because this is a § 1983 claim.

Keymon, are left guessing as to the inference to be drawn from Plaintiffs' quotation of each particular amendment.

## II.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a claim or claims for "failure to state a claim upon which relief can be granted." In deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6), the court must determine if it is clear that the plaintiff would not be entitled to relief even if the factual allegations in the complaint were proven. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Those factual allegations must be taken as true, *see Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989), and it must be apparent that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief[,]" *Conley*, 355 U.S. at 45-46 (1957). In other words, the complaint must be read in the light most favorable to the plaintiff. *Allard v. Weitzman (In re Delorian Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993).

In contrast, when a defendant seeks summary judgment based on the lack of evidence, the plaintiff may not rely on the facts alleged in the complaint to defeat the motion. FED. R. CIV. P. 56(e). Instead, a plaintiff responding to a defendant's motion for summary judgment with respect to an issue upon which the plaintiff bears the burden of production must go beyond the pleadings and "by affidavits or as otherwise provided in this rule, . . . set forth specific facts showing that there is a genuine issue for trial." *Id.* A "genuine issue" of disputed fact exists when a "reasonable jury could return a verdict for the non-moving

7

party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### III.

#### A.

#### Fourth Amendment

In the first paragraph, Plaintiffs state that their case arises, in part, "under the Fourth ... Amendment[] to the United States Constitution." Am. Compl. ¶ 1. In paragraphs twelve and thirteen, Plaintiffs then describe three different "seizures" that could possibly implicate the Fourth Amendment. *Id.* ¶¶ 12, 13. The first seizure occurred when Plaintiffs' truck was stopped for " 'expired tags and improper registration'" while being driven by an unidentified person. *Id.* ¶ 12. The second seizure occurred when the truck was subsequently taken from Jimmie's possession after an alleged "late hit" developed reporting the truck stolen. *Id.* Both of these seizures were allegedly effected in furtherance of an overall "conspir[acy] to take [the] truck" in which Jimmie claimed a constitutionally protected property interest. *Id.* ¶ 10. The third, and final, seizure occurred when Barbara was stopped for having a "dirty license plate" on her car. *Id.* ¶ 13.

These allegations are insufficient to state a Fourth Amendment claim. Besides Plaintiffs' citation to the Fourth Amendment, the vague descriptions of three distinct "seizures," and the vague references to a "conspiracy," there is no direct or inferential allegation in the Amended Complaint that any or all of these seizures were *unreasonable* within the meaning of the Fourth Amendment. *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th

8

Cir. 2005) (noting that "a complaint must at least contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory"). True, the Amended Complaint does suggest that the seizures may have been in furtherance of some conspiracy to "get" Plaintiffs for no legitimate reason. But the individual defendants' improper motives are irrelevant for purposes of the Fourth Amendment. *See Whren v. United States*, 517 U.S. 806, 813 (1996).

Thus, the only information the court can infer from the Amended Complaint is that three separate seizures occurred at different times and involving different participants. Those seizures may have been motivated by ill-will toward Plaintiffs. There is no allegation, however, from which it could be inferred that any one of the seizures was not "reasonable" under relevant Fourth Amendment jurisprudence. Although a plaintiff's burden in responding to a motion to dismiss is admittedly lenient, *see Perry v. Southeastern Boll Weavil Eradication Foundation, Inc.*, Nos. 04-5537/5540/5573, 2005 U.S. App. LEXIS 24677, at *32–33 (6th Cir. Nov. 15, 2005), the standard requires more than what appears in Plaintiffs' Amended Complaint regarding the Fourth Amendment. Accordingly, the Fourth Amendment claim is dismissed for failure to state a claim.

B.

Ninth Amendment

Plaintiffs' Ninth Amendment claim is without merit. The Ninth Amendment states that the "enumeration, in the Constitution, of certain rights, shall not be construed to deny

9

or disparage others retained by the people." U.S. CONST. amend. IX. The United States Court of Appeals for the Sixth Circuit has held that the Ninth Amendment confers no substantive federal rights enforceable in a § 1983 action. *See Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). *Accord Green v. Hill*, No. 94-1851, U.S. App. LEXIS 38843, at *5 (6th Cir. Dec. 27, 1995) (unpublished opinion); *Bush v. Zeeland Bd. of Educ.*, No. 1:01-cv-672, 2003 U.S. Dist. LEXIS 3788, at *43 (W.D. Mich. Mar. 6, 2003). Rather, this amendment merely declares that the principle *expressio unius est exclusio alterius* should not be used to deny the existence an asserted fundamental right on the sole basis that the right is not explicitly mentioned in the constitution's text. *See, e.g., Gibson*, 926 F.2d at 537. The court is bound by this interpretation of the Ninth Amendment. Accordingly, to the extent that Plaintiffs seek to recover for a Ninth Amendment violation pursuant to § 1983, Defendants Bowles and Keymon are both entitled to dismissal for failure to state a claim.

C.

Procedural Due Process

Plaintiffs' procedural due process claim also fails. The Due Process Clause of the Fourteenth Amendment provides, in relevant part, that no "State" shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1. The procedural aspect of this clause is violated when a state decides to effect the deprivation of a constitutionally protected life, liberty, or property interest without also providing

constitutionally adequate procedural safeguards. *See, e.g., Zinermon v. Burch*, 494 U.S. 113, 125–26 (1990). Procedural due process is, according to the Supreme Court, a "flexible concept that varies with the particular situation." *Id.* at 127. Although a bedrock principle of procedural due process is "notice and an opportunity for hearing *appropriate* to the nature of the case," *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (emphasis added) (internal quotation marks and citation omitted), not every particular deprivation of liberty or property requires the state to provide these procedures *before* the deprivation occurs. *See Zinermon*, 494 U.S. at 127–28 (citing several cases). When postdeprivation remedies are "the only remedies *the state* could be expected to provide," the availability of such remedies generally satisfies due process. *Id.* at 128 (emphasis added).

Plaintiffs' complaint fails to state a procedural due process claim because, while it may be assumed that Jimmie had a constitutionally protected property interest in the truck, the Constitution did not require or expect the State of Tennessee to predict the unpredictable and provide a hearing before its agents intentionally orchestrated a false theft report in furtherance of a conspiracy to take the truck from Jimmie. Thus, Plaintiffs' procedural due process claim falls within the doctrine of *Parratt v. Taylor*, 451 U.S. 527, 543–44 (1981)[5] and *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Under that doctrine, an unauthorized and

---

[5]*Parratt* was overruled on grounds not relevant to this case in *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986).

11

intentional[6] taking of property by a state actor does not violate the Due Process Clause if the state provides meaningful postdeprivation remedies because those are the only remedies the state could be expected to provide. *E.g., Hudson*, 468 U.S. at 533.

Plaintiffs allege that Defendants Bowles, possibly Defendant Keymon, and other officials and employees of Gibson falsely reported that Plaintiff had stolen a truck in order to justify a subsequent Fourth Amendment seizure of that truck. This was part of a conspiracy, the alleged purpose of which was to further Defendant Bowles' personal vendetta against Jimmie for not stopping Defendant Bowles' decertification. The State of Tennessee was in no position to foresee this deviation from normal law enforcement practice and to provide a "predeprivation" process. *Accord id.*, 468 U.S. at 521 n.2, 532.[7]

On the face of the Amended Complaint, Plaintiffs allege that the named defendants "conspired to take the truck and did not provide . . . notice and opportunity for a hearing" before they took the overt action in furtherance of the conspiracy. Am. Compl. ¶ 12. Such a predeprivation procedure would have been futile, however, because the State of Tennessee

---

[6]*Parratt* actually involved a negligent rather than an intentional taking of property. *Parratt*, 451 U.S. at 529. After *Daniels*, however, a negligent taking does not give rise to § 1983 liability. 474 U.S. at 330-31. Thus, when a negligent taking is at issue, it is now unnecessary for § 1983 purposes to examine the adequacy and availability of state procedural safeguards.

[7]*Zinermon* does nothing to undermine the precedential force of the *Parratt/Hudson* doctrine in this context. It is true that the court in *Zinermon* retreated from a definition of "unauthorized" that would have encompassed all conduct "not sanctioned by state law." *Zinermon*, 494 U.S. at 138. But the Court expressly retained a definition of unauthorized that would cover the situation where, as here, the defendant was "bent upon effecting the substantive deprivation and would have done so despite any and all predeprivation safeguards." *Id.* at 137. Deprivations of that sort still fall within the teaching of *Parratt/Hudson* because "no predeprivation safeguards would be of use in preventing the kind of deprivation alleged." *Id.* at 139. In short, *Zinermon*'s apparent limiting of *Parratt/Hudson* does not save Plaintiffs' complaint. *C.f. Flatford v. City of Monroe*, 17 F.3d 162, 168 (6th Cir. 1994) (recognizing, post–*Zinermon*, that "[a] citizen has no § 1983 cause of action . . . where state tort law furnishes all appropriate process, or where the deprivation cannot be predicted").

could not have predicted the conspiracy alleged and because these individual defendants were allegedly bent upon effecting the deprivation and would have done so regardless of any predeprivation procedural safeguards. For these reasons, a predeprivation hearing was not required by the Fourteenth Amendment even if the court assumes the truth of Plaintiffs' conspiracy theory. Furthermore, Plaintiffs have never so much as hinted that they are precluded or are otherwise hindered from securing the truck's return and/or seeking damages for its conversion under Tennessee law. This omission is fatal, however, "because the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional[.]" *Zinermon*, 494 U.S. at 125 (citing *Parratt*, 451 U.S. at 537 and *Carey v. Piphus*, 247 U.S. 247, 259 (1978)). "[U]nless and until the state fails to provide due process," no constitutional violation has occurred. *Id.* at 126.

In short, Plaintiffs were not entitled to a predeprivation hearing, and they do not claim that the State of Tennessee's postdeprivation remedies are nonexistent or inadequate. They have therefore failed to state a claim upon which relief can be granted under § 1983 for a violation of their procedural due process rights, and that claim must be dismissed.[8]

IV.

Remaining Claims

The Amended Complaint also contains the following paragraph:

> As a result of [Defendant Bowles' belief that Jimmie could have but did not

---

[8] The court expresses no opinion on the adequacy of whatever postdeprivation remedies Tennessee may provide because that issue has not been presented.

13

> stop Bowles' decertification], James Bowles undertook a series of acts to harm Jim and Barbara Hill in violation of the constitutional rights of equal protection; the enjoyment of life, liberty and property without due process of the law; freedom from invasion of privacy, right to earn a living without illegal interference; freedom from humiliation and intimidation and harassment.

Am. Compl. ¶ 8. Assuming, for argument's sake, this single paragraph is specific enough to state a cognizable claim under any of the listed "rights," the court does not consider those claims on the merits. Plaintiffs' sole contention in opposition to Defendants' motion is that there are disputed factual issues in the record regarding Defendant Bowles' and Keymon's participation in the alleged misconduct. *See, e.g.,* Pls.' Resp. to Defs.' Renewed Mot. to Dismiss and/or Mot. for Summ. J. at 2 (stating that "[p]laintiffs can prove . . . . they were subjected to retaliation and harassment by Defendants while Defendants were employees of the Town"). Unless the alleged misconduct violated a federal right, however, these defendants' alleged participation is of no moment. The first step in any § 1983 action is to identify the specific constitutional right or rights allegedly violated by a given set of presupposed factual allegations. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994) (citing *Graham v. Conner*, 490 U.S. 386, 394 (1989) and *Baker v. McCollan*, 443 U.S. 137, 140 (1979)).

Here, Plaintiffs have failed to answer that crucial legal question, apparently leaving it to the court to dissect the "catch-all" constitutional claim on Plaintiffs' behalf. Indeed, Plaintiffs' claims of violations of "equal protection; . . . due process of the law; freedom from invasion of privacy, right to earn a living without illegal interference; [and] freedom

14

from humiliation and intimidation and harassment" are not even discussed in Plaintiffs' response memorandum, much less supported by case law and argument. *See* Pls.' Resp. to Defs.' Renewed Mot. to Dismiss and/or Mot. for Summ. J. at 12–15 (failing to cite any case in support of equal protection, right of privacy, "right to earn a living[,]" or general freedom from humiliation and intimidation and harassment). But the court's function is to decide specific constitutional claims that have been fairly presented, not to address every conceivable "right" in the Constitution to determine if any one right is possibly implicated by a plaintiff's allegations.

In their Renewed Motion to Dismiss and/or Motion for Summary Judgment, Defendants' argument begins by specifically pointing out that:

> The Plaintiffs[] claim they have been subjected to harassment and retaliation by virtue of . . . being audited by various agencies, by Barbara . . . being stopped . . . , by police officers turning their lights on as she passed by, and by [Defendants] conspiring to [arrest Jimmie or to take his truck] for vehicle theft. *The Plaintiffs do not articulate the federal . . . constitutional or statutory rights they allege were violated by the alleged acts.* . . . The Plaintiffs merely recite various . . . Amendments [to the United States Constitution].

Defs.' Mem. Supp. Renewed Mot. to Dismiss and/or Mot. for Summ. J. at 6–7. Subsequently, Defendants raised the defense of qualified immunity on the basis that Plaintiffs had failed to identify a specific federal right. *See id.* at 9. Without regard to the ultimate merit of the qualified immunity defense in this case, the court believes that Defendants' arguments at minimum should have prompted Plaintiffs to devote some attention to clarifying what specific constitutional rights were violated by Defendants' alleged conduct, and when. Additionally, Plaintiffs should have made at least some effort

15

to locate and to present case law supporting each constitutional claim contained in paragraph eight of the Amended Complaint. *See* Am. Compl. ¶ 8 (equal protection, due process, "right to earn a living without illegal interference," and freedom from "humiliation and intimidation and harassment"). Plaintiffs' response does not demonstrate any such effort but instead describes the nature of their catch-all federal constitutional claim as follows:

> Plaintiffs were subjected to retaliation and harassment by Defendants while Defendants were employees of the Town.[9]

Pls.' Resp. to Defs.' Renewed Mot. to Dismiss and/or Mot. for Summary Judgment.

The lack of explanation or argument regarding the claims in paragraph eight leaves the court with no choice but dismissal of those claims.[10] *See, e.g., United States v. Leach*, No. 05-45-DCR, 2005 U.S. Dist. LEXIS 10391, at *14 (E.D. Ky. May 9, 2005) (stating that a "mere list of issues without any developed argumentation or citations to authority is insufficient to warrant consideration on the merits . . . . [as] judges are not . . . required to construct a party's legal arguments") (internal quotation marks and citation omitted); *see*

---

[9]Plaintiffs do make a procedural due process argument on pages fourteen and fifteen of their response. *See* Pls.' Resp. to Defs.' Renewed Mot. to Dismiss and/or Mot. for Summ. J. at 14–15 (referring to two cases cited by Defendants). The court has already disposed of that claim. *See supra* Partt III.C. The response contains not one citation to a case recognizing the equal protection, "right of privacy," "right to earn a living," or "freedom from humiliation and intimidation and harassment" claims.

[10]The court specifically notes that Plaintiffs have never attempted to frame their equal protection "claim" as one akin to the "class of one" claim recognized by *Village of Willobrook v. Olech*, 528 U.S. 562 (2000) (recognizing "class of one" claims by plaintiffs alleging intentional difference in treatment from others similarly situated without a rational basis for the difference in treatment). Although *Olech* claims have been recognized in the Sixth Circuit, *see Warren v. City of Athens*, 411 F.3d 697, 710–11 (6th Cir. 2005) (noting that a "class of one" plaintiff may prove the lack of a rational basis for difference in treatment by either (1) negativing all of the conceivable rational bases for government action *or* (2) "demonstrating that the challenged government action was motivated by animus or ill-will[]"), the court will not entertain an *Olech* claim that Plaintiffs have never fairly presented. Merely stating "equal protection" and reciting the text of the clause is not fair presentation.

16

*also United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving to the court to do counsel's work, create the ossature for the argument, and put flesh on its bones . . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace.") (internal quotation marks and citations omitted). It is not this court's duty to put together a convincing constitutional claim for Plaintiffs to rely on to overcome Defendants' argument that Plaintiffs have not "articulate[d] the federal . . . rights they allege were violated by the alleged acts." To do otherwise would be to depart from the court's role as an impartial decisionmaker and to become an advocate.[11]

Therefore, the court declines to address whether a "genuine issue" of fact exists because Plaintiffs have not explained how, even if the "genuine issues" are resolved in Plaintiffs' favor, the facts of this case show the violation of any "rights, privileges, or immunities secured by the Constitution and laws [of the United States]."

For these reasons, Plaintiffs' federal claims that Defendant Bowles and Defendant Keymon violated Plaintiffs' rights to "equal protection; the enjoyment of life, liberty and property and freedom from their deprivation without due process of the law; freedom from invasion of privacy, right to earn a living without illegal interference; freedom from humiliation and intimidation and harassment" are DISMISSED.

---

[11] In resolving the case on this ground, the court expresses no opinion on whether Plaintiffs' *could* have presented a constitutional claim on the facts alleged. The court simply finds that Plaintiffs have failed to do so.

17

V.

To the extent that Plaintiffs contend Defendants' conduct violated state law, the court declines to exercise supplemental jurisdiction over those claims. See 28 U.S.C. § 1367(c)(3). The case is remanded to the original state court for that court to adjudicate any state law issues properly before it.

VI.

For the foregoing reasons, Defendants' Renewed Motion to Dismiss and/or Motion for Summary Judgment is GRANTED in its entirety. All of Plaintiffs' § 1983 claims against Defendant Bowles and Defendant Keymon in their individual capacities are DISMISSED.[12] Defendants' Motion to Strike Portions of Plaintiffs' Response to Defendants' Renewed Motion to Dismiss and/or Motion for Summary Judgment is DENIED as moot. The case is REMANDED to the Circuit Court of Gibson County, Tennessee, for that court to address any unresolved state law issues. The clerk is directed to enter judgment in accordance with this order.

IT IS SO ORDERED.

                                    /s/ James D. Todd
                                    JAMES D. TODD
                                    UNITED STATES DISTRICT JUDGE
                                    16 December 2005
                                    DATE

---

[12] Plaintiffs' claims against the Town of Gibson and Plaintiffs' § 1985 claims were dismissed in separate orders.

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 41 in case 1:04-CV-01151 was distributed by fax, mail, or direct printing on December 19, 2005 to the parties listed.

---

Fred Collins
FLIPPIN COLLINS & HILL, PLLC
P.O. Box 679
Milan, TN 38358

Michael R. Hill
FLIPPIN COLLINS & HILL, PLLC
P.O. Box 679
Milan, TN 38358

Wanda Brown
GIBSON COUNTY CHANCERY COURT
Municipal Bldg.
1421 Osborne St.
Humboldt, TN 38343

Sam J. Watridge
LAW OFFICE OF SAM J. WATRIDGE
1215 Main Street
Humboldt, TN 38343

Honorable James Todd
US DISTRICT COURT